IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALMA PARKER, | ) |
|    Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 2:11-0288-KD-N |
| CGI TECHNOLOGIES AND SOLUTIONS, INC., | ) |
|    Defendant. | ) |

**ORDER**

This action is before the Court on defendant CGI Technologies and Solutions, Inc.'s (CGI) motion for summary judgment, statement of undisputed material facts, brief, and evidentiary materials in support (docs. 20, 21, 22). Upon consideration, and for the reasons set forth herein, CGI's motion for summary judgment is **GRANTED.**

I.    Background

In April 2011, plaintiff Alma Parker filed a complaint against CGI in the Circuit Court of Dallas County, Alabama. (Doc. 1). In Count One, Parker alleges that CGI discriminated against her on basis of race and religion in violation of Title VII of the Civil Rights Act, in Count Two, Parker alleges "wrongful termination/ discharge of employment" also based on race and religion, and in Count Three, Parker alleges a state law claim of breach of quasi-contract. (Doc. 1-1, p. 4-8).

CGI removed this action on basis that Parker's claims arise under federal law and that this Court has supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1331, 28 U.S.C. §1441(a), 28 U.S.C. § 1367. CGI also asserts that this Court has diversity jurisdiction. *See* 28 U.S.C. § 1332. CGI has now filed its motion for summary judgment and supporting evidentiary materials. Parker did not respond to the motion.

    Findings of fact

Because Parker failed to respond to the motion for summary judgment and consequently failed to identify any disputed facts in CGI's statement of undisputed material facts, her "[f]ailure to do so will be considered an admission that no material factual dispute exists". S.D. Ala. L.R. 7.2(b); *see Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1302–03 (11th Cir. 2009) (giving deference to interpretation of local rule which provides that if a "party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1B(2), such fact is deemed admitted by the respondent."); *see Patton v. City of Hapeville, Ga*., 162 Fed. Appx. 895, 896 (11th Cir.2006) ("We conclude from the record, however, that the district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when Patton failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Georgia."). The Court, having determined that CGI's statement of undisputed material facts are deemed admitted, makes the following factual findings (doc. 21, p. 2-11):

1. Parker's Hire and Employment With CGI

CGI is a full service information technology provider that supplies its clients with, among other things, technical employee staffing. (Doc. 22-1, Declaration of Dawn Champ, Exhibit A, ¶ 2.) In or about December or January, 2010, Parker submitted an electronic application for employment with CGI for a Call Center/Collections Representative position at the Dell facility in Bedford, Texas. (Doc. 22-2, Deposition of Alma Parker, Exhibit B, at 53.) CGI was providing call center support to Dell. (Doc. 22-2, Parker Dep. at 69.) In response to her employment application, Parker received an email from CGI requesting an interview. (*Id*., at 57-58.) Parker had two separate interviews with CGI employees. (*Id*., at 58.) Both interviews took place at the Dell facility. (*Id*., at

58.)

On January 14, 2011, Parker received a letter with a contingent offer of employment from CGI. (*Id.,* at 61; Doc. 22-2, p. 29-31, Ex. 1 to Parker Dep.)  The contingent offer letter expressly stated that the offer of employment and continued employment with CGI was contingent on passing a background check. (Doc. 22-2, p. 31, Ex. 1 to Parker Dep.).   The offer letter also expressly stated that the employment relationship between Parker and CGI was terminable at the will of either party, with or without cause or advance notice. (*Id.*, p. 31).  Parker electronically signed the offer letter on January 15, 2010. (Doc. 22-2, Parker Dep. at 63; Doc. 22-2, p. 29-31, Ex. 1 to Parker Dep.)  Parker understood that employment with CGI was contingent on successfully passing a background check. (Doc. 22-2, Parker Dep. at 64-65.)

On February 8, 2010, CGI permitted Parker and four other employees to begin work at the Dell facility after their criminal background checks were completed, but before completion of the full background check. (*Id.,* at 100-01; Doc. 22-1, Champ Decl. ¶ 9.)  When she began working at CGI, Parker understood that her continued employment with CGI was contingent on her successfully passing the full background check. (Doc. 22-2, Parker Dep. at 64-65.)

2. CGI's Background Check Process

Pursuant to CGI's Background Investigation Policy, "CGI initiates background investigations on all applicants extended an offer of employment. Commencement of employment is contingent upon successfully completing and meeting the criteria established by CGI (and/or the client) for the background investigation." (Doc. 22-1, Ex. A to Champ. Decl.) The Policy provides that an individual may be disqualified for employment with CGI if the background investigation reveals material misrepresentations or falsifications or "omission of factual disclosures or false certifications to completeness or accuracy of disclosures." (Doc. 22-1, Ex. A to Champ Decl.) The Policy also states that CGI will use an independent screening provider to conduct the background

3

investigations. (Doc. 22-1, Ex. A. to Champ Decl.)  CGI uses Verifications, Inc. as its screening provider. (Doc. 22-1, Champ Decl. ¶ 5; Doc. 22-2, Parker Dep. at 104-05.)  CGI provides Verifications, Inc. with a completed background questionnaire for each employee. (Doc. 22-1, Champ Decl. ¶ 5.)  Verifications, Inc. conducts the background check and contacts CGI with the results. (Doc. 22-1, Champ Decl. ¶ 5.)

       3. Parker's Failure To Pass The Background Check

As part of the background check process, Parker completed an electronic background questionnaire. (Doc. 22-2, Parker Dep. at 66; Doc. 22-2, p. 32-36, Ex. 2 to Parker Dep.)   Under the "Employment History" section, Parker identified several previous employers and dates of employment with each. (Doc. 22-2, Parker Dep. at 74-75; Doc. 22-2, p. 32-33. Ex. 2 to Parker Dep.) Among the employers she included, Parker listed Hidden Acres as her employer from July 2003 to April 2005 and Adjustable Bureau Collection[1] as her employer from January 2002 to July 2003.  (Doc. 22-2, Parker Dep. at 76; Doc. 22-2, p. 32-33, Ex. 2 to Parker Dep.)  After Parker signed the offer letter, CGI sent her background questionnaire and related documents to Verifications, Inc. to begin the background check process. (Doc. 22-1, Champ Decl. ¶ 6.)

On February 1, 2010, before Parker began working for CGI, Dawn Champ, a Human Resources Administrator for CGI, contacted Parker by email to inform her of several unresolved issues relating to her background check. (Doc. 22-2, Parker Dep. at 73-74; Doc. 22-2, p. 37, Ex. 3 to Parker Dep.)  In particular, Champ informed Parker that Verifications, Inc. had been unable to verify the dates of employment she had provided for Hidden Acres and Adjustable Bureau Collection in her background questionnaire. (Doc. 22-2, Parker Dep. at 74; Doc. 22-2, p. 37, Ex. 3

---

[1] Parker listed "Adjustable Bureau Collection" as an employer on her background questionnaire. (Doc. 22-2, p. 33, Ex. 2 to Parker Dep.)  Apparently, the correct name for this entity is "Regional Adjustment Bureau" as reflected in the wage and income transcripts later provided by Parker to CGI. (Doc. 22-2, p. 40, Ex. 6 to Parker Dep.)

4

to Parker Dep.)  Champ requested that Parker fax copies of her W-2 forms as proof of her dates of employment with these employers. (*Id.*)

On February 2, 2010, Parker provided Champ with the following documents: a 2003 Wage and Income Transcript for Regional Adjustment Bureau; a 2003 Wage and Income Transcript for Integrated Park Systems; and a 2005 Wage and Income Transcript for Talladega Clay Randolph Child Care. (Doc. 22-2, Parker Dep. at 79, 81; Doc. 22-2, p. 39-50, Ex. 5, 6 to Parker Dep.)  None of these documents reflected employment by Parker with Hidden Acres in 2004 and 2005 or with Adjustable Bureau Collection in 2003. (Doc. 22-2, p. 4-50, Ex. 6 to Parker Dep.)  In response, Champ asked Parker to clarify the relationship between Hidden Acres and the documentation supplied for 2003 and 2005. (Doc. 22-2, p. 39, Ex. 5 to Parker Dep.)

On February 3, 2010, Parker left Champ a voicemail informing her that Hidden Acres and Integrated Park Systems were the same entity. (Doc. 22-2, Parker Dep. at 91; Doc 22-2, p. 38, Ex. 4 to Parker Dep.)  Champ then emailed Parker to request that she provide W-2 information for Hidden Acres from 2005 and Regional Adjustment Bureau for 2003. (Doc. 22-2, Parker Dep. at 90; Doc. 22-2, p. 38, Ex. 4 to Parker Dep.)

Parker responded to this email and informed Champ that the W-2 for Hidden Acres was the W-2 for Integrated Park Systems. (Doc. 22-2, Parker Dep. at 91.)  Parker also informed Champ that she only worked at Hidden Acres for part of 2004, not from July 2003 to April 2005 as she indicated in her background questionnaire. (Doc. 22-2, Parker Dep. at 91-92; Doc. 22-2, p. 51, Ex. 7 to Parker Dep.)   In addition, Parker told Champ that she was unemployed for a period before she was hired by Talladega Clay Randolph Child Care in 2004. (Doc. 22-2, Parker Dep. at 91; Doc. 22-2, p. 51, Ex. 7 to Parker Dep.)  As to Regional Adjustment Bureau, Parker told Champ that she had only worked there from December 2002 to early 2003, not from January 2002 to July 2003 as she stated on her background questionnaire. (Doc. 22-2, Parker Dep. at 92; Doc. 22-,. p. 51, Ex. 7 to

Parker Dep.)

In response to Parker's email, Champ requested that Parker provide a W-2 for Regional Adjustment Bureau for 2003 and proof of income in 2004 from Integrated Park Services. (Doc. 22-2, Parker Dep. at 93; Doc. 22-2. p. 51, Ex. 7 to Parker Dep.)  Parker then submitted a 2004 Wage and Income Transcript to Champ. The transcript did not show that Parker received any income from Hidden Acres or Integrated Park Services in 2004. (Doc. 22-2, p. 40-50, Ex. 6 to Parker Dep.; Doc. 22-2, Parker Dep. at 87, 88.)

Parker's W-2 Wage and Income Transcript for the year 2004 also revealed that Parker worked for several other employers that year which she had not disclosed on her background questionnaire or on her application for employment with CGI. (Doc. 22-2, Ex. 2, Ex. 6 to Parker Dep.)  In particular, the transcript showed that Parker worked for Circulation III Promotions, Inc., Guaranteed Marketing Solutions, Mt. Sinai Community Baptist, Certified Payment Processing, Freedom Trail, and Capital Chevrolet and Imports in 2004. (Doc. 22-2, Parker Dep. at 82-86; Doc. 22-2, p. 40-50, Ex. 6 to Parker Dep.)

On February 7, 2010, Parker provided additional information to Champ. (Doc. 22-2, Parker Dep. at 93-94; Doc. 22-2, p. 52, Ex. 8 to Parker Dep.)  Specifically, Parker admitted to Champ that she worked at Regional Adjustment Bureau in 2002 only, not from 2002 to 2003 as she indicated on her background questionnaire and previously told Champ. (Doc. 22-2, Parker Dep. at 94; Doc. 22-2, p. 52, Ex. 8 to Parker Dep.)  In addition, she admitted that she worked at Hidden Acres in 2003 only, not 2004 or 2005 as indicated on her background questionnaire. (Doc. 22-2, Parker Dep. at 97; Doc. 22-2, p. 52, Ex. 8 to Parker Dep.)  Parker acknowledged that she had made several "errors" in listing her employment history on the background questionnaire. (Doc. 22-2, p. 52, Ex. 8)

On February 9, 2010, Champ sent Parker a letter informing her that "CGI was in the process of deciding the status of your offer of employment based on the information contained in your

report." (Doc. 22-2, p. 54-64, Ex. 10, Ex. 11 to Parker Dep.)  Champ included a copy of the background check from Verifications, Inc. and a summary of rights under the Fair Credit Reporting Act with the letter. (Doc. 22-2, Parker Dep. at 103; Doc. 22-2, p. 53-63, Ex. 9 & 10 to Parker Dep.)

   4. Parker's Termination

  On February 11, 2010, CGI terminated Parker's employment because she did not pass the background check. (Doc. 22-2, Parker Dep. at 109; Doc. 22-2, p. 65, Ex. 12 to Parker Dep.)  Of the four employees who began work with Parker, three were terminated for failing their background checks: Morgan Helm, who is African-American; Richard LeCroy, who is Caucasian; and Sheila Ward, who is also Caucasian. (Doc. 22-1, Champ Decl. ¶ 10.)  CGI did not know the religious affiliations, if any, of these employees.  (Doc. 22-1, Champ Decl. ¶ 10.)

  After being informed of her termination, Parker contacted Champ and provided additional information about her employment with Marvin's, Inc. and a traffic ticket she received for an expired license tag. (Doc. 22-2, p. 64, Ex. 11 to Parker Dep.)  Champ informed Parker that it was the discrepancies in her employment history, not her traffic ticket, that concerned CGI. (Doc. 22-2, p. 64, Ex. 11 to Parker Dep.)

  Parker also contacted Jenny Osborne, a Human Resources Specialist for CGI, following her termination. (Doc. 22-2, Parker Dep. at 126.)   She explained to Osborne that the information in her background check was not correct and that she "wanted it to be correct for my records." (Doc. 22-2, Parker Dep. at 126.)  CGI provided Parker with a corrected background report from Verifications, Inc. (Doc. 22-2, Parker Dep. at 112-13; Doc. 22-2, p. 66-75, Ex. 13 to Parker Dep.)  The corrected background report included the changes requested by Parker to the Marvin's, Inc. information. (Doc. 22-2, Ex. 13 to Parker Dep.)

  Parker never heard any CGI employee make disparaging comments about her race or religion. (Doc. 22-2, Parker Dep. at 131, 145.)  Parker's affiliation with a Christian ministry is listed

7

on her resume, which was submitted to CGI at the time she applied. (Doc. 22-2, Parker Dep. at 140-41, 143, 145; Doc. 22-2, p. 91-92, Ex. 24 to Parker Dep.) She never discussed her religion, which is Christian, with anyone at CGI during the three days she worked for CGI. (Doc. 22-2, Parker Dep. at 143, 145.) Parker claims to have discussed working on Sundays with a CGI employee (whom she was unable to identify), but admits that she did not tell the employee that she could not work Sundays because of her religion. (Doc. 22-2, Parker Dep. at 142.) She was supposed to work one Sunday per month and was agreeable to doing so. (Doc. 22-2, Parker Dep. at 143-44.)

Following her termination, Parker applied for unemployment compensation benefits from the State of Alabama. (Doc. 22-2, Parker Dep. at 156-57.) She was initially denied benefits, but benefits were granted on appeal. (Doc. 22-2, p. 76-78, Ex. 15, Ex. 16 to Parker Dep.; Doc. 22-2, Parker Dep. at 156-57, 160.)

Parker subsequently applied for unemployment compensation benefits in Texas after her Alabama benefits ended. (Doc. 22-2, Parker Dep. at 173; Doc. 22-2, p. 86-88, Ex. 20 to Parker Dep.) She was granted benefits, but CGI's account was not charged because Parker had not worked at CGI for a sufficient period of time. (Doc. 22-2, Parker Dep. at 175; Doc. 22-2, p. 86-88, Ex. 20 to Parker Dep.) Parker did not apply for reinstatement with CGI. (Doc. 22-2, Parker Dep. at 163).

    5. Parker's Administrative Charge and Complaint

On January 3, 2011, Parker filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division alleging that CGI discriminated against her because of her race and religion by terminating her employment. (Doc. 22-2, p. 79-81, Ex. 17 to Parker Dep.) This was 326 days after her employment with CGI ended. (Doc. 22-2, Parker Dep. at 109; Doc. 22-2, P. 65, Ex. 12 to Parker Dep.) The EEOC issued a Dismissal and Notice of Rights on January 4, 2011. (Doc. 22-2, p. 82-83, Ex. 18 to Parker Dep.)

At all times relevant to this case, CGI had in place policies prohibiting discrimination and

retaliation. (Doc. 22-2, Parker Dep. Ex. 19)   Parker never complained during her employment to anyone at CGI that she thought she was being discriminated against because of her race or religion. (Doc. 22-2, Parker Dep. at 128-29.)

III.     Conclusions of law

   A. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir.1991).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.*  However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

9

2552 (1986). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir.1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir.2004).

      B. <u>Analysis</u>

      By failing to respond, Parker has not met her burden to present evidence upon which the Court could find that there is a genuine issue of material fact. However, the "mere failure of the non-moving party to create a factual dispute does not automatically authorize the entry of summary judgment for the moving party." *Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.*, 778 F.2d 670, 673 (11th Cir.1985). The Eleventh Circuit Court of Appeals has held that "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion", and noted the provision in Fed.R.Civ.P. 56(e) that when "'the adverse party does not respond, summary judgment, *if appropriate,* shall be entered against the adverse party.'" *United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir.2004) (italics in original) (citation omitted); *see also Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1040 (11th Cir.2004) (vacating and remanding the district court's grant of summary judgment, in part, "[b]ecause summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment[.]")

The Eleventh Circuit further explained that

> [t]he district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [ ] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. The district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.  In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must indicate that the merits of the motion were addressed.

*One Piece of Real Property*, 363 F.3d at 1101-1102 (citations, internal quotations and footnote omitted).

Therefore, the Court "must review all of the evidentiary materials submitted in support of the motion for summary judgment" to "ensure that the motion itself is supported by evidentiary materials" *id*. at 1102, and review CGI's "citations to the record to determine if there is, indeed, no genuine issue of material fact" such that granting summary judgment would be appropriate. *Mann,* 588 F.3d at 1303 (citing *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008)).  "Even in an unopposed motion"  CGI as the movant "still bears the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id*. (quoting *Celotex Corp*., 477 U.S. at 323, 106 S.Ct. at 2553).

1. Parker's complaint

Construing Parker's *pro se* complaint liberally and in the interests of justice,[2] the complaint

---

[2] *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir.2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.") (quotations omitted), *cert. denied*, 549 U.S. 1323, 127 S.Ct. 1908 (2007); *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

appears to contain three claims: 1) That CGI discriminated against Parker on basis of race and religion by failing to hire Parker to a permanent position and wrongfully terminating her employment because she requested to be off work on Sundays and without lawful or justifiable reason; 2) that CGI retaliated against Parker for exercising her rights because GGI denied Parker the right to receive unemployment compensation and refused to reinstate her "after [she] filed for unemployment and it was determined that [she] was not at fault in being terminated"; 3) that CGI breached a quasi-contract, *i.e.*, an employment agreement, by terminating Parker. (Doc. 1-1, p. 3-8).

    2. Statute of limitation

CGI argues that Parker filed her charge with the Equal Employment Opportunity Commission twenty-six days late and therefore, her claims of discrimination based on race and religion under Title VII are time barred.  Parker was terminated on February 11, 2010.  She filed a charge of discrimination with the Texas Workforce Commission, Civil Rights Division on January 3, 2011, which was 326 days after the termination. (Doc. 22-2, p. 81).   Parker's time to file a charge of discrimination began to run on February 20, 2010 when she was terminated. *Grayson v. K–Mart Corp.*, 79 F.3d 1086, 1100 n. 19 (11th Cir.1996) ("More accurately, the time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision").  In a deferral state, such as Texas, Parker must file her charge within 300 days of CGI's wrongful conduct. 42 U.S.C. § 2000e-5(e)(1).  Thus, Parker's charge of discrimination was not timely filed and this action could be barred on that basis alone. *See Crayton v. Alabama Dept. of Agriculture & Industries*, 589 F.Supp.2d 1266 (M.D. Ala. 2008) ("By choosing this relatively short deadline, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination. . . . Thus, if a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.") (internal citations and quotations omitted).

3. Parker's Title VII claim for race and religious discrimination

Parker's failure to timely file her EEOC charge is a sufficient basis to grant summary judgment in favor of CGI.  However, even if timely, summary judgment is due to be granted in favor of CGI on the merits of Parker's claims.  Parker alleges that CGI discriminated against her on basis of race and religion by terminating her employment because she requested to be off work on Sundays.  (Doc. 1-1).  Parker also alleges that "similarly situated Caucasian service  representatives were allowed to retain their jobs without preference to their race or religious affiliation." (Doc. 1-1, p. 6).

CGI argues that Parker was terminated because she failed the background check and not because of her race or religion. CGI states that Parker and four other customer service representatives were allowed to start work before their background checks were complete but on the express condition that they pass the background check to keep their jobs.  CGI provided evidence that of these five, four were terminated for failing their background checks: two were Caucasian and two were African-American, including Parker. (Doc. 21, p. 15; Champ Declaration, ¶ 10 (Doc. 22-1).  Therefore, CGI argues that Parker cannot make her *prima facie* case because there are no similarly situated Caucasian employees that were treated differently.  CGI also argues that even should Parker make a *prima facie* case, she cannot rebut CGI's legitimate non-discriminatory reason to terminate Parker's employment: Parker failed the background check.

Under Title VII, it is unlawful for an employer to discriminate as to an employee's "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Parker, as the plaintiff, "bears the burden of proving" that CGI discriminated against her on basis of race and religion. *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir.2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456–457 (2006); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.

Ct. 1089 (1981).  Where there is no direct evidence of such discrimination or evidence of a statistical pattern of discrimination, the burden shifting analysis of *Burdine* and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.

Under this framework, Parker must establish a *prima facie* case of intentional race and religious discrimination. *Cooper*, 390 F. 3d at 802; *see also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).  In the alternative, Parker may present "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Edmond v. University of Miami,* 441 Fed Appx. 721, 723 (11th Cir. 2011) (citing *Smith v. Lockheed-Martin Corp.*, 644 F. 3d 1321, 1325 (11th Cir. 2011) (stating that "the *McDonnell-Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.")).

In order to establish a *prima facie* case of disparate treatment based on race and religion, Parker must show that " (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll,* 529 F.3d 961, 969 -970 (11th Cir. 2008).     Parker's burden "is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094.  Should Parker make her *prima facie case*, a presumption of unlawful discrimination arises, *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094,  and the burden shifts back to CGI to "articulate some legitimate, nondiscriminatory reason for the adverse employment action .... If [CGI] does this, the burden shifts back to [Parker] to show that [CGI's] stated reason was a pretext for discrimination." *Crawford*, 529 F.3d at 976 (citations and internal quotation marks omitted).

CGI presents evidence that Parker and four other persons started work as customer service representatives before their background checks were complete with their continued employment conditioned on passing the background check.  CGI also presents evidence that it did not know their

14

religious beliefs (Doc. 22-1, Champ Decl. ¶10). CGI points out that four of the five were terminated because they failed to pass their background checks - two Caucasians and two African-Americans including Parker. (Doc. 22-1, Champ Decl. ¶ 10.) Thus, CGI has sufficiently articulated a legitimate, non-discriminatory reason for terminating Parker.[3]

Parker did not rebut this evidence because she did not respond to the motion for summary judgment. CGI also points out that at deposition, Parker admitted that she could not identify any employee with similar discrepancies in their background check who was not terminated. (Doc. 22-2, Parker Dep. at 129, 163-164). Therefore, Parker failed to establish her *prima facie* case. *See Marshall v. Mayor of Savannah*, 366 Fed. Appx. 91, 98, 100 (11th Cir. 2010) ("The ultimate burden lies on Marshall to show a similarity between her conduct and that of male employees who were treated differently" . . . [w]ithout a valid comparator or other evidence of discrimination, Marshall's *prima facie* case fails.")

Moreover, Parker has not presented any evidence to rebut as pretext, CGI's legitimate non-discriminatory reason for terminating her employment. To rebut as pretext, Parker would have to show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (per curiam) (quotation omitted). By failing to respond to the motion for summary judgment, Parker has not met her burden to overcome CGI's legitimate, non-discriminatory reason for terminating her

---

[3] CGI cites *Boyd v. ChoicePoint, Inc.*, 2010 WL 5691503 (N.D. Ga. Dec. 14, 2010), wherein the district court granted the employer's motion for summary judgment and found that Boyd's failing the criminal background check was a legitimate non-discriminatory reason to terminate his employment, and to *Horton v. Nicholson*, 435 F. Supp. 2d 429, 435 (D. Hi. 2006), wherein the district court granted summary judgment in favor of the Secretary of Veterans Affairs after discharging Horton from probationary position based on his failing the background check because of misrepresentations relating to his employment history and false answers regarding his criminal background.

employment.

    4. <u>Parker's claim of retaliation</u>

  CGI first argues that the EEOC charge was untimely and thus any claim under Title VII based on retaliation is barred. CGI also argues that Parker failed to exhaust her administrative remedies because she did not include a retaliation claim or any allegation from which a retaliation claim may be related or likely to grow out of, in her EEOC charge. Finally, CGI argues that Parker's *prima facie* case of retaliation fails because she did not engage in protected conduct.

  Taking the latter first, Title VII's anti-retaliation provision prohibits CGI from discriminating against Parker because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "In order to establish a prima facie case for retaliation, a claimant must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Cabrera v. Secretary, Department of Transp.*, 2012 WL 1537921, 3 (11th Cir. May 3, 2012) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)). In the context of retaliation, the adverse employment action or "type of employer conduct considered actionable has been broadened from that which adversely effects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). Also, and importantly, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000).

(quotations and alterations omitted).

CGI argues that Parker cannot make her *prima facie* case of retaliation because there is no causal connection between the protected activity and the alleged retaliation. CGI is correct that Parker admitted she never complained to anyone at CGI about discrimination against her based on race or religion before she was terminated in February 2010, and she did not file an EEOC charge until January 2011. (Doc. 21, citing Parker Dep at 128-129, 143, 145). Moreover, the alleged retaliation of CGI by opposing Parker's application for unemployment compensation benefits occurred from February 2010 until June 2010, again before any protected activity.[4]

In her complaint, Parker also alleges that CGI retaliated against her by refusing or failing to reinstate her as a customer service representative after she was awarded unemployment compensation. CGI argues that Parker admitted at deposition that she never reapplied or sought reinstatement and admitted she was "not aware of any other employees who were offered reinstatement after their employment was terminated for failing the background check." (Doc. 21, Doc. 22-2, Parker Dep. at 163-164). (Parker Dep. at 163)  By failing to respond to the motion for summary judgment, Parker admits the facts alleged by CGI. Therefore, there is no genuine dispute of material fact that Parker did not apply for reinstatement; hence, CGI could not have retaliated against her refusing to reinstate. Further, Parker presented no argument that CGI was obligated to automatically reinstate her but failed to do so. This Court will not make her argument. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment").

---

[4] In the complaint, Parker alleges that CGI denied her unemployment compensation, that there was a "(12) twelve week investigation", and that for five months, from February 2010 until June 2010, she was without any unemployment compensation. (Doc. 1-1, p. 6-7).

17

Parker's state law claim of breach of quasi-contract

In the complaint, Parker alleges that a quasi-contract was formed by way of the offer of employment and acceptance. She alleges that a breach occurred when she was terminated because she had "falsified information" and then not reinstated after providing "additional information to prove [her] credentials." (Doc. 1-1, p. 7-9). CGI argues that no employment agreement, *i.e.*, no contract of any kind, was created by the offer of employment because the offer letter expressly stated that employment was terminable at the will of either party. CGI argues that if the letter could be construed as an agreement, it was not breached because the letter explained that employment was conditioned upon Parker passing the background check.

Generally, under Alabama law, "[n]o contract is formed without an offer, an acceptance, consideration, and mutual assent to terms essential to the contract." *Steiger v. Huntsville City Bd. of Educ.*, 653 So.2d 975, 978 (Ala. 1995) (citation omitted). However, a "quasi contract is not a contract at all. A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. . . . The purpose of imposing these contractual obligations is to bring about justice. . . . Moreover, these obligations are usually based on unjust enrichment or benefit; the defendant may be required to surrender the benefit he has received or even restore the plaintiff to a former status. . . . As the law may impose any obligations that justice requires, the only limit in the last analysis to the category of quasi contracts is that the obligation in question more closely resemble those created by contract than those created by tort." *Berry v. Druid City Hospital Bd.* 333 So.2d 796, 798 -799 (Ala. 1976) (internal citations and quotations omitted).

Thus, to succeed on a theory of quasi-contract, Parker must establish an "obligation that justice requires" on the part of CGI to hire or reinstate her. This she cannot do. The allegations in Count III of her complaint are simply that CGI offered her employment, she accepted, and then CGI

18

terminated her. However, Parker failed to rebut three now undisputed facts: That the offer of employment was expressly conditioned on passing a background check; that the additional information she provided served only to increase the discrepancies and inconsistencies in her background; and that the offer letter expressly stated that either party may terminate the employment at will. (*See supra*, at ¶ II. 2,3,4).[5] CGI was not under any obligation to employ Parker after she failed the background check or to reinstate her after she provided information which created more discrepancies and inconsistencies in her background.

IV.   Conclusion

Upon consideration of the evidence and for the reasons set forth herein, the Court finds that there is no genuine issue of material fact and CGI is entitled to judgment as a matter of law. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.") (citation omitted). Accordingly, CGI's motion for summary judgment is GRANTED.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED this the 11th day of May, 2012.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

[5] For example, the undisputed facts show that after her termination, Parker contacted Champ and provided additional information about her employment with Marvin's, Inc. and a traffic ticket she received for an expired license tag. (Doc. 22-2, p. 64, Ex. 11 to Parker Dep.) Champ informed Parker that it was the discrepancies in her employment history, not her traffic ticket, that concerned CGI. (Doc. 22-2, p. 64, Ex. 11 to Parker Dep.)